Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, Makdessi v. Fields. May it please the Court. My name is Steve Keel and I represent the appellant, Mr. Makdessi, in this matter. We've been here once before. Three years ago, this Court heard this case and remanded it to the District Court so the District Court could apply the proper legal framework to the facts of this case. Specifically, in that remand, this Court explained that the actual knowledge standard required for a deliberate indifference finding may be demonstrated through circumstantial evidence and that a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. This Court also provided guidance to the lower court in how to apply the legal standard to the facts of this case. This Court said that the defendants did not initially assign Smith to Makdessi's cell does not necessarily shield them from liability if they knew that the undisputedly vulnerable Makdessi shared a cell with an undisputedly vulnerable person. This Court said that the defendants did not initially assign Smith to Makdessi's cell does not necessarily shield them from liability if they knew that the undisputedly vulnerable Makdessi shared a cell with an undisputedly aggressive gang member. This Court said that the defendants did not initially assign Smith to Makdessi's cell does not necessarily shield them from liability if they knew that the undisputedly vulnerable Makdessi shared a cell with an undisputedly vulnerable person. This Court said that the defendants did not initially assign Smith to Makdessi's cell does not necessarily shield them from liability if they knew that the undisputedly vulnerable Makdessi shared a cell with an undisputedly vulnerable person. These facts you could only go one way with application of the correct legal standard? The magistrate judge held an evidentiary hearing. Right. In which your client testified. Everybody who wanted to testified. That's correct. Length. Yes. Two, three days of legal hearings altogether, right? In total, yes. Yeah. So is the gist of your argument in response to what my colleague said, questions, is it yes, the correct legal standard was known and was applied, but on these facts, you could only go one way after application of the legal standard. Therefore, judgment should have been granted and could only be granted. But the facts were the same when we saw them last time. Why wouldn't we just direct judgment for you? There have been some additional facts that were developed on remand that the district court did not properly take into account that I would like to go over with this court. And I'm happy to have you do that. Do you ask us to direct judgment for your client or do you ask us to send it back? I request that this court direct judgment for Mr. Makdessi. Okay. And some of the facts that were developed on remand. And so I just want to be clear on that. You say under these facts, as a matter of law, you win. Yes. No other possible conclusion. Yes, Your Honor. Despite her credibility determinations, it just doesn't matter. Under these facts, she had to find and all you want is a damages hearing. That's correct, Your Honor. I would also like to talk about the credibility determinations because I think they were based on mistakes that the lower court made. And I'd like to go through those. First, I wanted to go to this institutional classification form that was moved into evidence on remand, which is in the joint appendix at page 1098. And this is a form that is a prison form authored by a captain in the prison, Jeffrey Kaiser, one week after the assault in this case. And I think the language in this form, as written by the prison, goes to the knowledge of the defendants and shows that the risk was obvious. First, at the top, in the second full paragraph, it says, Makdessi has been at this prison, Wallins Ridge, since 2007. He is a known snitch among staff and other inmates. And that's from the beginning. He was on my caseload from the start. And his first words to me were, I know where the drugs are in this pod. And he has continued to exhibit this behavior. Further down, towards the bottom of the page, it again says, He is well known among staff and inmates for being a snitch, as he does not try to hide it. And it says, he has not been a reliable information giver, but other offenders only know that he snitches. So what do you do with that? This shows that these supervisors, who are the defendants in this case, supervisors in this prison, Knew he was a snitch. They knew he was a snitch. Now that makes him... I think that is why this satisfies the obvious risk. That makes him a vulnerable inmate. He's vulnerable to attack from other inmates, particularly gang members, such as his cellmate. The prison defendants in this case testified that their responsibility was to be aware of security issues in the prison. That if there were security issues, they would be brought to them. No question these are troubling facts. No question that it could go in your way, that one could look at it just like you see it. But they came back with rebuttal testimony, rebuttal evidence, and essentially say they didn't do this. And on review, what is our review of that question when a trial judge makes that determination? How do we review that? The judge's legal... De novo. The trial judge's findings... The findings of fact. The findings of fact would be reviewed for clear error, but the legal conclusion would be reviewed de novo. And the question of whether those findings of fact were sufficient... When we get to the legal conclusions, let's deal with the findings of fact. The trial judge has before it evidence indicating he's a snitch on the one hand, but also rebuttal testimony saying completely the opposite, and makes that finding a fact. How do you then... How do we then say that's clear error? The documentary evidence rebutts that rebuttal testimony. It's not plausible. It is not plausible that these defendants did not know he was vulnerable to attack based on the record evidence. And so that finding of fact is an error. It just is not based on plausible testimony. And it's not just that we have this one document saying that he was well known to be a snitch. We have the history of grievances. We also have the fact that he has been paired with an inmate who has a history of violence. Are you confusing evidence in the record with having to win on that record? You clearly have evidence in the record that supports your view. But when the judge has a trial, the judge... I've never heard of a trial that I can think of where there isn't conflicting evidence. There isn't conflicting evidence. That just because there's evidence in the record which would support you, that doesn't mean you win as a matter of law. I think that the findings showed clear error. And the judge said to go to, for instance, the credibility determinations that you discussed that appellees place a lot of weight on. The magistrate judge found that her finding was based, quote, in large part on her finding that Mr. McDessie was not credible. And then she went through several examples of why she believed Mr. McDessie was not credible. And the district court adopted this without any real examination. But point after point... How do you know the district court adopted it without any examination? How do you know that? Based on the text of the opinion. Wait a second now. That doesn't mean that the district court didn't review it in coming to the conclusion. Are you sure about that statement you just made? You want to say something like it's not clear from what he wrote that he gave the review you wanted. Are you sure about that? I agree, Judge Shedd. It's not clear from the text of the opinion. For instance, the magistrate judge wrote that it was a contradiction that Mr. McDessie said he screamed loudly during the assault, but also later that when he attempted to scream, his inmate punched him and made it hard to breathe. So the magistrate judge is suggesting that he was not actually screaming and that he could not be heard. But another inmate, Curtis Thomas, testified and said that he could hear the fight and that the magistrate's own findings show that McDessie testified he was first screaming for some time and, quote, after a while he was held face down on the bed so that he could not scream. So that would not go to credibility. The magistrate also talks about these offender locator cards and how long Mr. McDessie was placed in segregation when he complained about being assaulted in 2007. She says that he testified he was there for 35 days. The locator cards contradict that, but the locator cards show he was there for 34 days. It's a minor discrepancy. It does not go to credibility. Then there was a prior alleged assault on December 8th. Where exactly did you ask us to grant judgment as a matter of law to you in this case? You asked us to reverse. I'm just looking for it. Is that what you asked for? I thought you asked for it to be reversed. You say to enter judgment for you as a matter of law. I'm not saying you didn't do it. I just don't see it. Your Honor, I asked for the judgment to be reversed. That's correct. And that would be if you wanted it to go back for the matter to be retried based on your arguments. I don't want you to take too much more time. Maybe when you stand back up you can show me. You asked for it to be reversed. I'll look into that, Your Honor. I'll look into that, Your Honor, and come back to you. There was this issue of a prior assault. Let me just get this straight. Whatever you did ask for in your briefing to us as you stand here now after our questions, you're asking for judgment as a matter of law. That's correct, Your Honor. Okay. Mr. McDessie also testified he was assaulted by this cellmate on December 8th, two weeks before the assault at issue in this case. The magistrate judge brought up this issue of whether he had a stab wound as a result of that assault. And she says a doctor found there was no stab wound, so that's a credibility issue. When Mr. McDessie was asked about that scar, he was not as definitive as the judge reported in her findings. He said, I believe I do. I didn't think so because I was looking in the mirror to see if there was a scar, and I wasn't sure, and then I put my glasses on last week, and I noticed there was a little scar there. So this is where I'm planning on this. If everything you say is true, that could establish there's an obvious risk. But pharma goes further. The case of pharma goes further. And it says that even if you establish an obvious risk, the defendants may nonetheless rebut this. And so they come forth with this rebuttal information. It's general denials. It's denying this whole thing has happened, the whole bit. And the question is, even if everything you say is true, obvious risk, why is the rebuttal testimony not sufficient for us to conclude that the trial court was correct? Because the rebuttal testimony was just blanket denials. It was just their word saying I didn't, you know, I wasn't aware of this. There is no other actual rebuttal evidence besides their testimony. But what if that's the truth? What if just blanket saying I didn't do it would be that's their testimony? And the trial judge says, okay, I believe you didn't do it. I've been observing you. I see your credibility, your whole bit, and you say you didn't do it. It's not enough when the clear weight of the evidence goes the other way. And that's the case here. But, see, the clear weight of the evidence, we have your client's testimony. None of us. Were you there during the hearing? Not during the initial hearing, no. And during the subsequent hearing? Yes, I was. So you've actually seen your client and seen whether he's credible or not, but none of us have. And that's the whole thing about appellate review. We have to take the record as it's written, and, you know, in this country, the trial judge makes the credibility determinations and determines who's credible or not. And one of us might have come out the other way, but that unfortunately doesn't do it for you. So I thought your answers to the initial questions about whether the correct legal standard was known and assertedly applied goes a long way for substantiating what happens when there are these three hearings and there are credibility determinations and there are conflicts between the two sides, right? So tell me why I'm wrong about that. First, because the credibility determinations were incorrect. They were based on mistakes made by the lower court. So they're not plausible. What if the lower court had just said, I find your client totally incredible. I just did not believe anything that came out of his mouth and said nothing else. That's essentially what the – So that would be a credibility determination, right? Yes. And then she would say, and I credit all the defendants for what they have said was the account. And you wouldn't have any basis for saying the credibility determinations, you know, would just have a two-page opinion, which we sometimes get, as you know. So what would you say then? Because there would be a correct legal standard, there would be credibility determination, and there would be finding that the other side had been credible and she did believe them. In that case, I think we would still have a record from the hearing, and this court has held that – So you'd be making the same argument? Yes, Your Honor. This court has held that documents – well, I apologize, the Supreme Court in the Anderson case held that documents or objective evidence may contradict the witness's story or the story may be so internally inconsistent or implausible on its face that it could not be credited. Where such factors are present, there would be clear error. So because those credibility determinations are not plausible because of the record evidence, then that is why they should not be given weight, and this court should focus on the factors that it instructed the lower court to focus on, which is whether the defendants knew that McDessie was vulnerable, that Smith was aggressive and violent, and that they were sharing a cell together. And the defendants – it was obvious that the defendants must have known those three facts. Can I ask you to go back to this document that you directed us to in the very beginning of your oral argument, which is, I would say, a mixed bag for you, because what it suggests to me is that your client intentionally put himself in a situation where he could then claim that there had been some sort of abuse and get special treatment. It – there is a – you're on our line to that. So if you're relying on this document. I'm trying to find it right now, Your Honor. He has made himself a possible target and victim in several instances, especially claiming, when I can tell you where the drugs are. He's not been a reliable giver of information, but other offenders only know that he snitches. So I guess as a matter of policy, because really, really at issue here, or at the core of your cases, this is really a bad policy. This is – this really – the prison handles this kind of person totally badly. As a matter of policy, should inmates be allowed to sort of make their own terms of confinement? You know, I don't like to be in a cell with other people, and I need to have special cushions because I'm extremely sensitive. I mean, I'm just not sure that really follows. The – the court has said that prison officials may not let the state of nature take its course. And if an inmate makes himself into a victim, he is no less deserving of protection from the prison guards or no less entitled to be physically and sexually assaulted by other inmates than any other inmate in that prison. He may have mental issues. There may be various reasons why somebody would make themselves to be a victim. He may do that because he realizes that he needs protection and that he can't protect himself. And so it's a cry for help. He's trying to do what he can to get protection. Well, in other parts of the law, we take the plaintiff as he is, right, and we assess their ability to prevail on what they are, not what – and I just – I'm just not sure. I mean, this is a little bit different because it's in a prison context. Yeah, I know, to be sure, to be sure. I've kept you over time. Do my colleagues have any questions? Okay, we'll hear from you about rebuttal. Thank you. Good morning, Your Honors. And may it please the Court, Matt McGuire on behalf of the Virginia Department of Corrections officials in this case. As the Court has already heard this morning, this is the second time this case has been up on review. And the Department officials agree with representations by the appellant that the magistrate judge and the district court applied the correct legal standard as articulated by this Court in the first appeal. So on remand, the magistrate judge held a second evidentiary hearing. The district court judge reconsidered new objections to the evidence in this case. And ultimately, after weighing conflicting evidence and assessing the credibility of the witnesses, the two triers of fact found that Mr. McDessie had not shown actual knowledge on the part of these three defendants. So the sole issue before this Court from the Department's perspective is whether or not the district court's decision was clearly erroneous. Mr. McGuire, how did the Department attempt to find out where all of these complaints from Mr. McDessie went because none of these defendants knew anything about anything? Your Honor, not to my knowledge. I think you decided not to just explore that at all. These people were not counseled by your office? They were, Your Honor, but our general practice and what was on the record here was that the defendants were asked if they were aware of Mr. McDessie's complaints. And they all testified that they weren't. And that was credited by the district court judge. And just so purposes, I'll come back and make sure I ask the question, but for purposes of the appeal. Why don't you just answer her question? She's asking, did you take any effort to find out where these complaints went? That's the question, I think. No, Your Honor. I am not aware of any special effort on remand to find out the answer to that. You said you're not aware of any special effort? Any effort. Any effort, Judge Shedd. But the point here for us. Well, you know, maybe you can get away with that, but I don't think that that's really in the spirit of what the remand was about. You? Judge Mott. You were supposed to be trying to find out if there was a violation of the Constitution here. Judge Mott, the witnesses on remand from the department testified that they were unaware of Mr. McDessie's grievances. And if we look at the actual record, there are really only two that were directed to their attention or could have been. There is one that was sent to Defendant Gallagher that's dated in 2007, but it's not, he didn't sign it. There's no representation on the document that he ever saw it. It's just a notation that he was copied on it. And he testified and told the department that he doesn't remember it, he didn't see it. There was another one to Lieutenant Fields where there was an accusation in 2010 by Mr. McDessie. Didn't some talk about numerous complaints out there and that you couldn't find them? Wasn't that going to the question here? I understood the question as whether these three defendants had seen them, Judge. You acknowledge that he filed the complaint. There isn't, the record is undisputed that the complaints were filed, correct? That's correct, Judge Motz. Okay, so what I was asking you is if there was any, because they had testified before. They didn't know anything about the complaints. So I wondered if you made any efforts, I represented the state once upon a time in state agencies, and I'm pretty confident I've gone back and tried to find out what happened. What happened to all those complaints? But nobody decided to do that, right? Judge Motz, the most I can represent to the court is that I didn't handle the case on remand and I didn't ask that question in advance of oral. Did you discuss it with the lawyers who did handle it before? Yes, Judge Motz. Okay, so does any lawyer direct the prison people to go and find out what happened to these complaints? Judge Motz, in the course of a normal case where there's an argument about what happened in this case with all these complaints, yes, somebody early in the case likely did go pull them, but I can't represent to the court one way or the other because I don't know the answer. I'm sorry, I literally couldn't hear what you were saying. Judge Motz, the normal expectation in a case like this is with discovery and the process leading to the filing of the case that these complaints would have been dug up, and a number of them are in the record, a huge number. But there was no action undertaken on remand that I'm aware of that went back to look for further complaints, additional complaints, or verify anything. My question obviously has not been clear. The record was clear on these many complaints. How many were there? At least 20. Sorry, more than 20. More than 20. And that they were filed, but that the defendants said they didn't know anything about these complaints. And what I'm asking you is not to look for other complaints, but whether there was any after the remand and after it was clear that they said there were no complaints. Just as a matter of prison procedure, did you try to find out where these complaints were and how in the future similar complaints could be known by the proper officials? No, Your Honor. To my knowledge, the answer is no. But there were only two that were in the record that were directed to these officials. And with respect to at least one of them, there is evidence that shows that Lieutenant Fields was aware of the complaint and had seen it. It was one about informal complaint forms that came up the same year before the assault happened. And there's an email where Lieutenant Fields was contacted by the grievance official, and he responded that he had never been asked for one, but he would go talk to Mr. McDessie about it. But let's take a step back, I guess, on the appellate side of the issue, is the court should take the evidence in the light most favorable to the defendants who prevailed after two full evidentiary hearings. And the Department certainly recognizes and agrees with what I think all three of Your Honors have said, is the evidence in the record is troubling. It is very regrettable that Mr. McDessie was. Well, if you think it's so troubling, why don't you take efforts to do something about it? That's what I really find inexplicable. Well, Judge, from the Department's side, Mr. McDessie is not credible, and the testimony from our witnesses is credible on appeal that they didn't know that he was vulnerable, that they didn't know that he was a snitch. If we look, for example, at one of the forms that's been talked about a lot this morning, it's JA1098, this internal classification authorization form. And that form postdates the events here. But it's also noteworthy that none of the three defendants, and there are only three left in the case, are on that form. This case really feels, and I understand how the law is shaping on it, but it really feels like there's something more here. I'm not sure if we can get to it. But there is evidence here that this individual has made these complaints numerous times. He says he was raped, and as a result of that, he had blood on his pants and whatever. It never was analyzed.  What about the semen on the bed? Did they test that? On the bed? I'm not sure if they tested the bed. I know they sent off the underwear that were at issue in the case. Numerous times apparently he's made this complaint, and then you've got this whole institutional classification authority hearing summary that comes out. The officer says they don't know he's vulnerable, but the summary itself indicates he was known to be a snitch, and he was being transferred to this housing unit for higher protection. And this individual, this sentiment too, is a pretty dangerous fellow. And apparently he just, the allegation that he's abusive, and they do nothing. Judge Shedd, there's sort of a, or Judge Wynn, there's sort of a lot there I'd like to unpack. Don't even look alike. Maybe you hope we'll think alike. And then I'd like to unpack, if I can. The first is, he does make a lot of allegations of sexual assault in the case, and that is one of the more troubling aspects. But the facts that came out at trial, through two evidentiary hearings, is that only one of those instances. How does he prove it? I mean, he's filing complaints, and if what happens is complaints, they disappear. If this is actually happening to him, and it's his word against the correctional offense officials, and the ultimate statement is we didn't do anything, you have physical evidence that's really not being investigated, how does he prove it? I mean, and then you put him in this situation, and it's obvious something does happen to him. I mean, ultimately something does happen, right? No one is disputing that he was assaulted, Judge. What happened to him eventually? He was assaulted over some period of time. It was in dispute, but he said it was like five or six hours, but an officer testified that he went by, and there was no issue going on during that time. And so the result would be, we'd have to sort of believe, well, that just happened. The officer that had no clue of this happening at all, over his statement, this has been going on, and I've been trying to keep you from doing this, and you put me in this dangerous situation, and this happened to me. Part of the problem here, Judge Wynn, and I do want to respond on the sexual assault allegations, because there is only one actual complaint form that ever came up where he identified somebody who specifically sexually assaulted him, and that was an inmate named Jay Perez. And that was investigated by the department. And it is in the record that they have consulted the videotapes that McDessie said would corroborate him. They interviewed the witnesses, and it turned out that it was false. What he said happened didn't happen. And did McDessie even claim in this instance? Did he not say at one point he had not been sexually assaulted? He did, Judge Shedd. He told the doctor, I think it's a J732, right after all this assault happened on December 21st, that he was not raped. That's what the doctor's testimony was. How did he say that? Wasn't it because that might not be a very good thing for him to say and then go back out in that general population? That is certainly possible, Judge Wynn. There's any number of reasons why he might have said something. But, again, I think taking a step back on appellate review here is we have to draw and see the evidence in the light most favorable to the defendants. The triers, in fact, heard all of this evidence over three days and assessed witness credibility. There is an enormous amount of conflicting evidence in the record. The Department and I are not going to stand here and say that you couldn't have gone the other way. So do you read the district court's opinion to hold that the risk to McDessie was not obvious, or do you read it as holding that there was a rebuttal of a showing of the obviousness? I read the district court's opinion as sort of reaching three different conclusions, Judge Wynn, the first being that the risk was not obvious. The easier way for the court to affirm is that the defendants rebutted it, their testimony that they didn't see the grievances, which was credited, their testimony that the characteristics of these two inmates physically didn't raise any red flags. And because that was credited, that's the easiest way to resolve the case. The third way the district court analyzed it was the Department's policy that if Mr. McDessie had refused to go back to his cell during the five-month period, any time during the five-month period he was housed with Smith, that they would have been immediately segregated. And that was sort of going to Farmer's idea that there were just reasonable prison policies that can be put in place to try to overcome situations like this one. And so the district court said that his ability to refuse, crediting Lieutenant Field's testimony that this was an accurate statement of Wallensbridge's policy, he had said, I'm not going back to my cell, he would have been segregated. And he could have taken that act at any point over the five months that he lived with Smith before this unfortunate event occurred. And so the district court, I think, had three different holdings, but just given the standards that apply here on appeal, I think the easiest way to resolve the case is to look at it as a rebuttal case, that the defendants rebutted it just in light of the fact that these were experienced corrections officials who testified and were credited that they didn't see any issues housing these two inmates together based on their physical characteristics, and that they were unaware of all of Mr. McDessie's complaints. He's saying that they are complicit in this. They are doing this because they say he's a snitch. There's evidence in the record here from this hearing summary that establishes the fact that the staff viewed him as being a snitch. No, Your Honor, I wouldn't agree with that characterization, and that's not what I'm saying. And I don't think that that report establishes that for these defendants. These defendants aren't named on that report. These defendants didn't sign that ICA report. The most that report tells us is that that officer who wrote that report, speaking of unidentified prison officials, said that he was known to be a snitch. But there is nothing to link that to these defendants. And while that might be an inference that could be drawn from the facts of the case, it wasn't drawn by the triers of fact here. And on appeal, that's sort of the dispositive part of it. It's just because it is clear error, and we're dealing with weighing of conflicting evidence which is entitled to the highest degree of appellate deference, that's sort of where the case comes out, at least from the Department's perspective. You've already told us that you didn't do any investigation. Did the prison do any investigation of its procedures or put in any new procedures so that you couldn't have a subsequent incident where somebody would file 20 complaints, more than 20 complaints, and the people that could do something about it didn't know anything about them? Judge Motz, like I said, I don't know the answer to that question. But if you did look at Yalhar's testimony on rebuttal, on the remand in this case, he did say that it's common, at least in his experience at Wallins Ridge, for people to seek transfers between cells for any number of reasons or to seek segregated housing by alleging that they're in threat of serious harm. He said that, in his experience, this is a way that inmates manipulate cell moves. But what you're really telling me is you don't know that they did anything, but they really didn't have to do anything because this isn't a problem. Well, I don't think so, Judge Motz, to my answer earlier about the reasonable practice that's in place. If there is a legitimate threat, if Mr. McDessie had truly believed that his life was in danger on December 20th, the day before the assault, all he had to say was, I'm not going back to my cell, and he would have been immediately segregated. And I know that's a little bit unsatisfying, but the prison is full of intractable problems, and Wallins Ridge, in particular, has a huge gang population. There's 300 or 400 gang members housed at it. It's a very high-security prison. How big a prison is it? About 1,200. So it's about a quarter of the population. And so, I mean, they're just trying to deal with the prison population that they have. What is the racial population? Pardon? What is the racial breakdown? I don't know the racial breakdown. It's not in the record, Your Honor. You know, I don't know, but I expect somebody to come with a little knowledge of their client. I guess that's too much to ask. Go ahead. Your Honor, it's not clear to me exactly why the racial component would be particularly relevant here, other than to say that, just to fall back on kind of— You said that this was a problem, because he was an Arab, that he was particularly picked on. So what I was asking you is, was that basically a real minority? Was half the prison— But you don't know anything about that. Go ahead. I mean, unless the Court has further questions, ultimately, from the Department's perspective, it is a clear-error case, and after three days of evidentiary hearings, and given the enormous amount of conflicting evidence in the record and the credibility findings, we would ask the Court to affirm. First, Your Honor, it honors— I find it kind of incredible that the State questions whether or not Mr. McDessie was sexually assaulted on this date, December 21st, when the State itself lost the evidence that would have answered this question for us. But it doesn't mean making a difference for purposes of the State. I mean, the State acknowledged he was assaulted. That's correct, but they use it to attack his credibility. I hear you. Okay. And they also—on the December 8th assault, Mr. McDessie had a bloody T-shirt and bloody underwear, which he put in an envelope that was in his cell that he claims shows that would be evidence that he was actually assaulted on that date. The State collected that as evidence and also lost that envelope so that it could not be tested. So it's kind of Kafkaesque to hear these credibility determinations be made against Mr. McDessie when the State is the one that is losing the evidence that could answer these questions. Your client originally made a complaint against the prison system itself, right? I think so, back in the day. I know it's hard to remember back, but I think the prison system itself and the warden, and those claims are gone. A separate complaint, Your Honor. There have been several complaints. Oh, so there's another action pending against the prison? I'm not aware of one. Oh, I thought you were saying there were separate complaints. I said several, I apologize, in the past. I'm not aware of any pending. Okay. I thought they were all part of the suit, a bunch of defendants, no? There were additional defendants, yes. Yes, that's correct. There were additional defendants. That have been dismissed. That have been dismissed. We're left with these three. The State also, the defense, talks about how Mr. McDessie did not identify who would be likely to attack him. And the magistrate judge and the district court also say that his complaints refer to they doing this and they doing that. You sound like you are making an argument that summary judgment should not be imposed against you. We have evidence of this. We have evidence of that. I think the district court acknowledged on a summary judgment standard, summary judgment should not be entered against you. There was some question of whether or not summary judgment was. I don't think it was. It was a factual hearing and basically a bench trial. But your argument seems to be, we have evidence to show and therefore we win. But that's a summary judgment type argument. I'm saying that we have evidence that the defendant's testimony That wasn't rebutted. That wasn't rebutted. That wasn't rebutted. And that in and of itself is strong enough to make our case despite any evidence to the contrary. That's correct. The only evidence to the contrary is their own testimony, which is not plausible. Wait, wait. Since when doesn't testimony count? It always counts. Indeed, it often counts the most. When you have evidence that shows that the testimony was wrong, that's when it doesn't count. That's when you have somebody on the stand testifying. You often have cross-examination. At that point, they have something wrong. Maybe there is something wrong. But at least when you charge a jury, you say you may believe any of the testimony you want to or none of it. And you may believe any part of anybody's testimony and ignore any part of anybody's testimony. That's how we make determinations in this country. The district court and the magistrate judge did not attempt to even consider and weigh any contrary evidence. For instance, the magistrate judge accepted Lieutenant Field's testimony that he, quote, had no reason to believe McDessie was particularly vulnerable or had been picked on by other inmates prior to December 21, 2010. There's no standard that a judge in a bench trial has to respond specifically to every piece of evidence offered. There's no case law that says that. For instance, the JA-1090A classification form seems like it would be an important piece of evidence that would go to the knowledge of these defendants. The magistrate judge did not discuss it in her analysis at all. The district court did not discuss it in its analysis. And the district court, in its original opinion, brought up this snitching question. And in the original opinion, the district court said, quote, it dismissed the idea that McDessie could be vulnerable because he was a snitch, saying, quote, there was no admissible evidence supporting a reasonable inference that any of the defendants knew of such rumors of McDessie being a snitch. That's at JA-1008. No admissible testimony supporting this. And now we come forward with evidence showing, admissible evidence showing the defendants would have, must have known of that, and it's not even considered by the district court. So it seems like... See, the problem with your argument is it goes too far, because you know, I know you're a good lawyer, and I know you've worked with judges in this court as a law clerk, so I know that you know that the deal is that the district court doesn't have to address every piece of evidence, right? That's correct. They don't have to address every piece of evidence. In United States v. Caporal, a case from this court, 701 F3rd 128 from 2012, this court said, we may discern clear error when a court makes findings without properly taking into account substantial evidence to the contrary. So the district court doesn't have to discuss every piece of evidence. There's certainly a lot of evidence in this record. But when there is substantial evidence to the contrary that is not taken into account, that is clear error. And I believe that's what happened here. Thank you very much for your argument. And I understand you're court-appointed. Am I right about that? Yes, Your Honor. We very much appreciate your efforts. You did a fine job for your client. Thank you very much. We'll come down and greet the lawyers and go directly to our next case.
judges: Diana Gribbon Motz, Dennis W. Shedd, James A. Wynn Jr.